IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DESMOND PEACOCK, | ) | CASE NO. 1:17-cv-00583 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN CHARMAINE BRACY, | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Desmond Peacock ("Petitioner" or "Peacock"), proceeding pro se, filed this habeas corpus action pursuant to 28 U.S.C. § 2254.  His federal habeas petition is deemed filed on March 15, 2017, the date he placed it in the prison mailing system.[1]  Doc. 1, p. 8 (hereinafter referred to as "Petition").  Peacock challenges the constitutionality of his convictions and sentence in *State of Ohio v. Peacock*, Case No. CR-14-588585-A (Cuyahoga County).   Doc. 1; Doc. 5-1.

On December 5, 2014, following a jury trial, Peacock was found guilty of one count of felonious assault with a firearm specification; one count of aggravated robbery with a firearm specification; one count of kidnapping with a firearm specification; and one count of theft.  Doc. 5-1, p. 10; Doc. 5-4, pp. 195-197, 199.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Peacock's Petition was docketed in this Court on March 20, 2017.  Doc. 1.

For the reasons set forth below, the undersigned recommends that the Court DISMISS and/or DENY Peacock's Petition.

## I.       Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Eighth District Ohio Court of Appeals summarized the facts underlying Peacock's convictions as follows:

> {¶ 3} Carmen Gambino rode his bicycle home to Ohio City after working a late night shift in downtown Cleveland. While riding on Fulton Road, his bicycle was suddenly sideswiped by a vehicle. First the passenger, then the driver, jumped out of the vehicle. Wielding shotguns, they robbed Gambino of his backpack and cell phone. As the two men drove off, Gambino was able to take a good look at the vehicle's license number. The police traced the license number to a black Chevy Cobalt registered to a woman. That information quickly led the police to a man named Desmond Peacock; his name appeared in an accident report involving the vehicle several years ago, and his physical appearance matched the description of the driver of the Cobalt given by Gambino. The next morning, Gambino identified Peacock as the driver from a photo array. Within days, the police arrested Peacock and searched his house. In the house, they found the victim's backpack and two shotguns. The police also found the Chevy Cobalt parked a street away from Peacock's house. The passenger of the Cobalt was never identified or found.

> {¶ 4} Peacock was charged with felonious assault, aggravated robbery, and kidnapping—all accompanied by one-and-three-year firearm specifications—and theft. At the jury trial, Peacock testified on his own behalf. He claimed the case was one of mistaken identity. He claimed two other men lived in the house and they, not him, robbed Gambino. Disbelieving his account, the jury found him guilty of all offenses and accompanying gun specifications.

> ***

> {¶ 8} The state presented ten witnesses, including the victim and six police officers who investigated the robbery.

{¶ 9} The robbery victim was 27–year–old Gambino, a resident of Ohio City. He gave a detailed account of the robbery incident. On August 14, 2014, he rode his bicycle home around 3 a.m. after finishing a night shift at a bar in downtown Cleveland. While he was riding along Fulton Avenue near his home, he was suddenly sideswiped by a vehicle coming from behind. As the vehicle came to a stop, the passenger jumped out and stuck a sawed-off shotgun in Gambino's face. While holding the gun, he pushed Gambino for five or ten feet to an area between two houses, and used his other hand to pull Gambino's cell phone out of his pocket. Gambino fought with him and made his way back to the front of the houses, all the while pushing him away and screaming at him. As Gambino struggled with the passenger, the driver jumped out of the vehicle as well. Holding a full-length shotgun, he demanded Gambino's backpack, saying "you don't want to fuck with us; give us the bag." Gambino surrendered his bag, and the two men fled in their vehicle.

{¶ 10} While they drove off, Gambino memorized the vehicle's license plate number. He ran across the street to a house for help, and the resident called the police. A tape of the 911 was played before the jury. Within five minutes, the police arrived. Gambino provided the vehicle's license plate number to the police. He was also able to describe the appearances and clothing of the two suspects.

{¶ 11} The driver, a black male, was close to Gambino's own height of six-three. He had a "heavier-set athletic build" and wore four-inch dreadlocks "all over his head." He wore an oversized, navy T-shirt and black pants. The passenger, also a black male, was shorter, between five-six and five-eight. He wore an oversized, light grey hoodie and baggy blue jeans. Gambino was unable to see the passenger's face because he had a red bandana over his face. Gambino was, however, able to take a good look at the driver's face because, unlike the passenger, the driver's face was unmasked.

{¶ 12} Detective Elliot Landrau testified that, thanks to the license plate number provided by the victim, within hours of the robbery, the police learned that the vehicle was a Chevy Cobalt owned by a woman named Latoya Norris. The detective's research further revealed that the vehicle had been involved in an accident several years ago and an individual by the name of Desmond Peacock was identified in the report. Detective Landrau retrieved Peacock's driver's license photo and noted that Peacock's height, weight, and dreadlocks matched the description of the driver provided by the robbery victim.

{¶ 13} Detective Landrau compiled a photo array, and Detective Cynthia Moore showed it to the victim as a blind administrator, all within 24 hours of the robbery. Gambino identified No. 4 from the photo array as the driver with 100 percent certainty. Desmond Peacock was No. 4.

{¶ 14} Detective Landrau also interviewed Latoya Norris, the owner of the Cobalt.

3

Peacock turned out to be the father of her two children, and she had given Peacock the Cobalt to drive.

{¶ 15} Following these leads, the police went to Peacock's residence on East 130th Street a few days later. Peacock gave his consent for the officers to search his house. He indicated he lived with two men, Cedric Nelson and James Hamilton, but did not tell the officers what he later claimed was to be crucial to his defense—that he lived in the upstairs unit of the house. According to Detective Landrau's testimony, prior to the search of the house, Peacock acknowledged there were some shotguns in the house and they were his, but explained the guns were there for his protection.

{¶ 16} Inside the house, the police found a sawed-off and a full-length shotgun, as well as the victim's custom-made backpack, in the living room downstairs. A grey hoodie was found in the dining room downstairs. A red bandana was found in a downstairs bedroom. Other items unrelated to the robbery were also found in the house: a .22 caliber rifle in the living room downstairs; a bullet proof vest in an entry closet; and a revolver in an upstairs bedroom dresser.

{¶ 17} Two days later, the Cobalt was found a street away from Peacock's house. A pouch with shotgun shells was found behind the seats. Several rounds for a .22 rifle were also found in the vehicle.

{¶ 18} Peacock denied being involved in the robbery. He testified that on the night of the incident, he went to bed around 11 p.m., his usual bedtime, and woke up around 5:30 or 6:00 a.m. the next morning to go to work. He acknowledged he owned the house on East 130th street, but claimed he lived upstairs. He testified that James Hamilton and Cedric Nelson, who paid him rent, lived downstairs, where the shotguns and the victim's backpack were found.

{¶ 19} Although Peacock testified his house was a two-unit home divided into downstairs and upstairs, two detectives who searched the house testified that the house appeared to be used as a single-family residence. Detective Landrau testified that, although the house had two doors in the front, its upstairs was accessible from downstairs through a staircase in the back of the house. Detective Lawrence Smith also testified that the house was an up-and-down double but it appeared to be used as one unit because "the rear was open." Although Peacock claimed at trial he lived upstairs, he notably did not reveal this to the police officers when he gave them consent to search his house.

{¶ 20} Detective Landrau testified that although Peacock identified James Hamilton and Cedric Nelson as individuals who also lived in his house, these two individuals were eliminated as potential suspects because neither of them matched the description of either the passenger or driver given by the victim. Regarding the driver, the victim described him as over six feet tall, athletic build, and wearing dreadlocks. Regarding the passenger, the victim had reported to the police that the passenger was short, about five-feet-six. Peacock claimed that Hamilton had access

4

to the Cobalt, but Peacock himself testified Hamilton was six foot and 300 pounds, a "big guy," which apparently did not match the physique of either the driver or the passenger. It is unclear from the testimony whether the passenger also had dreadlocks: the victim did not indicate at trial whether the passenger had dreadlocks, but Officer Landrau testified that his review of the police report indicated the passenger also had dreadlocks. Crucially, Peacock acknowledged at trial neither Hamilton nor Cedric wore dreadlocks.

{¶ 21} Peacock also acknowledged at trial that his physical appearance matched the victim's description of the driver: he was six feet tall with an athletic build. Although Peacock did not have dreadlocks at the time of trial, he admitted he wore four-or-five-inches long dreadlocks around the time of the robbery incident.

{¶ 22} The victim identified Peacock from a photo array as the driver. He also identified him in court, noting the absence of the dreadlocks. Regarding the reliability of his identification, the victim testified that the area where he was robbed was bright enough for him to get a good look of the driver. Detective Landrau and Officer Paul Swisher, who also testified at trial, confirmed that the area was well lit with street lights.

{¶ 23} Peacock admitted he had Latoya Norris's Cobalt but claimed that he did not drive the car because his driver's license had been suspended. He testified that, instead, Hamilton drove him around in the Cobalt. On cross-examination, however, he admitted he had been stopped for driving under a suspended license.

{¶ 24} Also on cross-examination, Peacock admitted that, during phone calls from jail, he told Latoya Norris "I really fucked up this time for real * * *," and told his mother that he got there "because of [his] own stupidity" and "he put [himself] in [the] situation."

{¶ 25} Both the sawed-off and full-length shotguns found in the house were admitted as state exhibits. The victim identified them in court as weapons used in the robbery. Both shotguns were tested to be operable.

*State v. Peacock*, 2015-Ohio-4697, ¶¶ 3-4, 8-25, 2015 WL 7075840, ** 1, 2-4 (Ohio Ct. App.

Nov. 12, 2015) (alterations in original); *see also* Doc. 5-1, pp. 65-66, 67-73.

## II.    Procedural Background

### A.  State conviction

On September 10, 2014, a Cuyahoga County Grand Jury indicted Peacock on (1) one

count of felonious assault in violation of O.R.C. § 2903.11(A)(2), with two firearm specifications

and forfeiture specifications (Count One); one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1), with two firearm specifications and forfeiture specifications (Count Two); one count of kidnapping in violation of O.R.C. § 2905.01(B)(2), with two firearm specifications and forfeiture specifications (Count Three); and one count of theft in violation of O.R.C. § 2913.02(A)(1), with forfeiture specifications (Count Four).  Doc. 5-1, pp. 3-7.  Peacock pleaded not guilty to the indictment at his arraignment on September 15, 2014.  Doc. 5-1, p. 8.

The case proceeded to jury trial.  Doc. 5-1, p. 9.  At the close of the State's case and at the close of Defendant's case, Peacock moved for a Rule 29 acquittal.  Doc. 5-1, p. 9.  The trial court denied Peacock's motions for Rule 29 acquittal.  Doc. 5-1, p. 9.  On December 5, 2015, a jury found Peacock guilty as charged in the indictment.  Doc. 5-1, p. 10; Doc. 5-4, pp. 195-197. The trial court proceeded to sentence Peacock on January 7, 2015.  Doc. 5-1, p. 11; Doc. 5-4, pp. 200-215.  After merging two counts[2] and running the sentences for the underlying offenses concurrently and the sentences for the gun specifications consecutively, Peacock received an aggregate sentence of 10 years.  Doc. 5-1, pp. 11, 66-67.

**B.  Direct appeal**

On February 3, 2015, Peacock, through new counsel, appealed to the Eighth District Court of Appeals.  Doc. 5-1, pp. 13-20.  In his appellate brief filed on August 11, 2015, (Doc. 5-1, pp. 21-40), Peacock raised the following assignments of error:

> 1.  The record is unclear as to Appellant's convictions and sentence. The discrepancy between sentencing transcript and the journal entry with respect to merger of allied offenses has caused substantial prejudice to Appellant and must be reversed.

---

[2] As found by the state court of appeals, the sentencing transcript reflects merger of Counts Two and Three.  Doc. 5-4, pp. 213, 216-217.  The sentencing entry reflects merger of Counts One and Two.  Doc. 5-1, p. 11.  As discussed below, the discrepancy was raised as an error on appeal and the court of appeals instructed the trial court on remand to correct the journal entry, nunc pro tunc, to reflect merger of Count Two (aggravated robbery) and Count Three (kidnapping).  Doc. 5-1, pp. 65,78-80, ¶¶ 2-40.

2.      The trial court erred in denying Appellant's Criminal Rule 29
        motion for judgment of acquittal.

3.      The manifest weight of the evidence does not support Appellant's
        convictions.

Doc. 5-1, p. 24.  The State filed its appellate brief on June 29, 2015.  Doc. 5-1, pp. 41-62.  On

November 12, 2015, the Eighth District Court of Appeals affirmed in part, vacated in part, and

remanded the case to the trial court.  Doc. 5-1, pp. 63-81.  The court of appeals affirmed

Peacock's convictions except for the three-year gun specification related to the felonious assault

count.  Doc. 5-1, p. 65, ¶ 2.  The court of appeals concluded that there was insufficient evidence

to support the firearm specification for the felonious assault conviction because the assault was

committed by sideswiping the victim's bicycle with a vehicle with there being no evidence that

the defendant displayed or brandished a firearm while committing the felonious assault.  Doc. 5-

1, pp. 74-76, ¶¶ 28-31.  The court of appeals also instructed the trial court on remand to correct

its journal entry, nunc pro tunc, to reflect the merger of Count Two (aggravated robbery) and

Count Three (kidnapping) as stated during the sentencing hearing rather than Count One

(felonious assault) and Count Two (aggravated robbery) as set forth in the journal entry.  Doc. 5-

1, p. 80, ¶ 40.

On December 23, 2015, Peacock, pro se, filed a notice of appeal with the Supreme Court

of Ohio.  Doc. 5-1, pp. 82-83.  In his memorandum in support of jurisdiction (Doc. 5-1, pp. 84-

117), Peacock presented the following propositions of law:

1.      Were the Appellant's sentences and convictions properly merged as
        allied offenses?

2.      Were Appellant's convictions based on insufficient evidence and
        were the convictions against the manifest weight of the evidence?

Doc. 5-1, p. 85.  The State filed a Waiver of Memorandum in Response.  Doc. 5-1, p. 118.  On

March 23, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Peacock's appeal.

Doc. 5-1, p. 119.

### C.  Trial court entries following reversal and remand

On December 2, 2015, the trial court filed a nunc pro tunc entry as and for January 7,

2015, reflecting the merger of Counts Two and Three.  Doc. 5-1, pp. 120-121.   On January 25,

2017, the trial court issued a journal entry reflecting that the court of appeals had reversed the

conviction for the three-year gun specification on Count One.  Doc. 5-1, pp. 122-123.  Therefore,

Peacock's sentence for Count One did not include the three-year sentence for the gun

specification and Peacock's aggregate sentence was seven years, with Counts Two and Three

merging and the State having elected that Peacock be sentenced on Count Two (aggravated

robbery).  Doc. 5-1, pp. 122-123.

### D.  Federal habeas corpus

In his Petition, Peacock raises the following two grounds for relief:

> **GROUND ONE**: Petitioner was denied due process when his offenses were
> not properly merged at sentencing.
>
> **Supporting Facts**:  Petitioner was charged with felonious assault,
> aggravated robbery and kidnapping of the same victim.  The actions were
> done at the same time.  The Satte [sic] contended that Petitioner attempted
> to assault assault [sic] the victim in order to rob him.  The charge of
> kidnapping was already merged with the aggravated robbery.
>
> **GROUND TWO**: Petitioner was denied Due Process under the United
> States Constitution when he was convicted against the manifest weight of
> the evidence and with insufficient evidence in support of the same.
>
> **Supporting Facts**: Petitioner was convicted in the absence of any forensic
> evidence linking him to the crime. The State did not test the forensic
> evidence available for trial and did not preserve the evidence in a manner

so that it could be tested at a later date.  There were discrepancies in the description of the perpetrator by the witness and the actual appearance of Petitioner.  Discrepancies existed as to the description of the car involved in the crime.  The evidence and testimony did not support the Petitioner's conviction beyond a reasonable doubt.

Doc. 1, pp. 4-5.

## III.    Law and Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

### B. Exhaustion

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,

10

444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))

("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a

habeas petitioner must present both the factual and legal underpinnings of his claims to the state

courts.[3]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner

must present his claims to the state courts as federal constitutional issues and not merely as

issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir.

1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for

relief must be presented to the state's highest court in order to satisfy the fair presentation

requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902

F.2d 480, 483 (6th Cir. 1990).

### C.  Peacock's grounds for relief

#### 1.    Ground One should be DISMISSED and/or DENIED

In Ground One, Peacock contends that he is entitled to federal habeas relief because the

state court did not properly merge allied offenses.  Doc. 1, p. 4; Doc. 9, pp. 7-10.  He

acknowledges that the aggravated robbery and kidnapping charges were merged but contends

that the felonious assault and aggravated robbery charges also should have been merged.  Doc. 1,

p. 4; Doc. 9, pp. 7-10.

The undersigned recommends that the Court DISMISS Ground One as unexhausted

because Peacock did not fairly present his claim to the state courts.   In his direct appeal, Peacock

---

[3] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

argued that there was a discrepancy regarding which counts had merged.  Doc. 5-1, pp. 34-37.

He did not present a specific allied offense argument as to his convictions for felonious assault

and aggravated robbery.  Further, after the state court of appeals determined that the trial court

had merged the aggravated robbery and kidnapping counts not the felonious assault and

aggravated robbery counts and instructed the trial court to clarify its sentencing journal entry

through a nunc pro tunc entry (Doc. 5-1, pp. 79-80, ¶¶ 36-40), Peacock filed a memorandum in

support of jurisdiction with the Supreme Court of Ohio but did not assert that the failure to

merge the felonious assault and aggravated robbery counts was error.  Peacock argued that,

"[w]hile the Eighth District corrected the clerical error made by the trial court, the Court failed to

address and correct the error of the trial court's failure to merge the theft offense with the

aggravated robbery count."  Doc. 5-1, p. 94 (emphasis supplied).  Since Peacock did not present

the claim he now presents in Ground One, i.e., that the felonious assault and aggravated robbery

counts should have merged, to the state courts, the undersigned recommends that the Court

DISMISS Count One as unexhausted.

Alternatively, for the reasons discussed below, the undersigned recommends that the

Court DISMISS Ground One as not cognizable on federal habeas review or DENY Ground One

as being without merit.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); s*ee also Lewis v. Jeffers*, 497 U.S.

764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v.*

*Isaac*, 456 U.S. 107, 121 n. 21 (1982) ("We have long recognized that a 'mere error of state law'

is not a denial of due process.") (internal citation omitted)).  A challenge to a "state court's interpretation and application of its sentencing laws and guidelines[]" is not cognizable on federal habeas review. *See Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *see also Thorne v. Lester*, 641 Fed. Appx. 541, 544 (6th Cir. 2016) (finding federal habeas relief was unavailable for errors of state law, which included the petitioner's claim that the state court misapplied state merger rule).

Peacock attempts to frame his challenge to the state's interpretation of the merger statute as a violation of his right against double jeopardy.  Doc. 9, pp. 7-8.  However, the Double Jeopardy Clause provides no basis for habeas relief in this case.  "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states that 'no person . . . shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . .'  The clause was incorporated against the states through the enactment of the Fourteenth Amendment."  *Person v. Sheets*, 527 Fed. Appx. 419, 423 (6th Cir. 2013) (citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)).  "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  *Duncan v. Sheldon*, 2014 WL 185882, * 31 (N.D. Ohio Jan. 15, 2014) (quoting *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations omitted)).  "In contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government."  *Person*, 527 Fed. Appx. at 423 (citing *Volpe*, 708 F.3d at 697).  Thus, "as long as the state court has concluded that the legislature intended cumulative

punishment, this court is bound by that conclusion." *Duncan*, 2014 WL 185882, * 32 (quoting *Palmer v. Haviland*, 273 Fed. Appx. 480, * 6 (6th Cir. 2008) (unpublished)). Ohio's allied offense statute is set forth in O.R.C. § 2941.25.

The trial court merged only the offenses of aggravated robbery and kidnapping. The felonious assault charge involved the use of a vehicle to side-swipe the victim while he was riding his bicycle. Doc. 5-1, pp. 5, 65. Thereafter, the perpetrators exited their vehicle and committed the aggravated robbery using shotguns. Doc. 5-1, pp. 5, 65. The trial court did not merge the felonious assault and aggravated robbery charges. Further, when the state court of appeals reviewed Peacock's assignment of error regarding the discrepancy between the sentencing transcript and journal entry, the court of appeals concluded that merger of the aggravated robbery and kidnapping charges, not felonious assault and aggravated robbery, was intended. Doc. 5-1, pp, 79-80, ¶¶ 38, 40. Also, when the state court of appeals reviewed Peacock's sufficiency of the evidence claim and concluded that the evidence did support a conviction for a three-year firearm specification accompanying the aggravated robbery charge but did not support the conviction for a three-year firearm specification accompanying the felonious assault charge, the state court found that the "felonious assault by the deadly weapon of a motor vehicle was committed before the robbery." Doc. 5-1, p. 75, ¶ 31. Peacock contends that "the two offenses were impossibly intertwined and shared the same animus, making them allied offenses." Doc. 9, p. 10. However, this Court will not review the state court's application of its sentencing laws. Moreover, Peacock has not shown that state law required merger. *See e.g., State v. Moore*, 2002 WL 832488, * 4 (Ohio App. Ct. May 2, 2002) ("two crimes of felonious assault and aggravated robbery are not allied offenses"); *see also State v. Gedson*, 1998 WL 382166, * 3 (Ohio App. Ct. July 9, 1998). Since this Court is bound by a state court's

interpretation of its sentencing laws, Peacock cannot demonstrate that he was subjected to multiple punishments when his felonious assault and aggravated robbery offenses were not merged and he is unable to establish a violation of his double jeopardy rights.

Considering the foregoing, the undersigned recommends that the Court DISMISS and/or DENY Ground One as unexhausted, not cognizable on federal habeas review, and/or without merit.

### 2.    Ground Two should be DISMISSED in part and DENIED in part

In Ground Two, Peacock contends that his convictions are against the manifest weight of the evidence and without sufficient evidence.  Doc. 1, p. 5; Doc. 9, pp. 10-23.

#### a.  Manifest weight of the evidence

"A 'manifest weight of evidence' claim, which is based on a state law concept that 'is both quantitatively and qualitatively different' from a constitutional due process sufficiency of evidence standard, raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding[.]" *Brown v. Moore*, 2008 WL 4239160, *2, 8-9 (S.D. Ohio 2008) (footnote 2 omitted) (citing and relying on 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984)).  Accordingly, the undersigned recommends that the Court dismiss Peacock's manifest weight of the evidence claim in Ground Two as not cognizable on federal habeas review.

#### b.  Sufficiency of the evidence

Unlike a manifest weight of the evidence claim, a sufficiency of the evidence claim is a cognizable claim on federal habeas review.  *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

15

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (reaffirming that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

16

In rendering its decision, the state court of appeals addressed the sufficiency claim, stating:

{¶ 26} When considering a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins,* 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 27} Peacock does not dispute the victim's account of the assault and robbery, but argues the state failed to prove that he was the person committing the offenses. Peacock is correct that "in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime." *State v. Collins,* 8th Dist. Cuyahoga No. 98350, 2013–Ohio–488, ¶ 19, citing *State v. Lawwill,* 12th Dist. Butler No. CA2007–01–014, 2008–Ohio–3592, ¶ 11. Our review of the record shows, however, that the state presented ample evidence proving Peacock was the driver in the robbery. The direct evidence proving identity in this case included the testimony of an eyewitness—the victim—who not only identified Peacock from a photo lineup with 100 percent certainty, but also identified him in court. The state in addition presented compelling circumstantial evidence regarding identity: the shotguns identified by the victim as used in the robbery, as well as the victim's unique backpack, were found in the house where Peacock resided; Peacock was given the use of the vehicle involved in the robbery by its owner. Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Peacock guilty of the assault and robbery offenses beyond a reasonable doubt. The claim that the evidence was insufficient to support these convictions lacks merit.

{¶ 28} However, our review of the state's evidence reveals that there is insufficient evidence for the three-year gun specification accompanying the felonious assault charge.

{¶ 29} The state indicted Peacock for felonious assault as defined in R.C. 2903.11(A)(2), which states that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." The indictment against Peacock stated that the deadly weapon utilized in this case was the Chevy Cobalt. The indictment comported with the evidence that Peacock committed felonious assault by sideswiping the victim's bicycle with his vehicle.

17

{¶ 30} However, the state's evidence did not support a conviction for a three-year firearm specification, defined in R.C. 2941.145(A). That statute imposes a three-year mandatory prison term when an offender "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." The statute requires that the defendant must have displayed, brandished, indicated his possession of the firearm, or used it to facilitate the underlying offense. *State v. Mosely,* 166 Ohio App.3d 71, 2006–Ohio–1756, 849 N.E.2d 73, ¶ 22 (5th Dist.).

{¶ 31} Here, the state's evidence shows the felonious assault by the deadly weapon of a motor vehicle was committed before the robbery. While the evidence was sufficient to establish appellant displayed and brandished a shotgun during the subsequent robbery, there was no evidence showing the defendant displayed or brandished the firearm while committing the *felonious assault.* The firearm was brandished during the robbery not during the felonious assault.[1] In other words, the evidence supported a conviction for a three-year firearm specification accompanying the aggravated robbery offense but did not support a conviction of the three-year gun specification accompanying the felonious assault charge. Therefore, we vacate Peacock's conviction for the three-year gun specification contained in the felonious assault count. The second assignment of error is sustained in part, overruled in part.

> [FN 1] The state acknowledged the evidence showed that the felonious assault by the use of a vehicle was separately committed prior to the aggravated robbery involving a gun: at sentencing, while advising the court that the kidnapping and aggravated robbery counts would merge, the prosecutor stated that "[t]he felonious assault charge was separately committed prior to the aggravated robbery charge."

*Peacock*, 2015 WL 7075840, ** 4-5 (alterations in original).

The crux of Peacock's sufficiency argument is that the evidence was insufficient to establish that he was the perpetrator of the crimes.  He challenges the reliability of the eyewitness's testimony, arguing that the victim provided different descriptions of his assailant.  Peacock also points out that he did not have a license to drive at the time of the crimes and he therefore provided his downstairs tenant, James Hamilton, with keys to his girlfriend's vehicle so that Mr. Hamilton could drive Peacock where he needed to be.

To the extent that Peacock contends that there was not enough direct evidence to connect him to the crimes, i.e., no forensic evidence, "[c]ircumstantial evidence alone is sufficient to support a conviction[.]" *Johnson*, 200 F.3d at 992; *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence"). Furthermore, much of Peacock's argument amounts to a request that this federal habeas court reweigh the evidence or evaluate the credibility of the witnesses. However, as discussed above, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003). The jury heard the testimony of the witnesses and evaluated the credibility of the witnesses' testimony, including that of the victim. Having done so, the jury reached guilty verdicts. Deference is due the jury's determination. *Brown*, 567 F.3d at 205. The focus is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera*, 506 U.S. at 402. Here, Peacock has not demonstrated that the jury's decision to convict Peacock of the crimes based on the direct and circumstantial evidence was not rational.

Furthermore, as discussed above, on federal habeas review, two layers of deference apply. Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In reviewing Peacock's sufficiency of the evidence claim, the court of appeals applied the proper standard, i.e., "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Doc. 5-1, p. 73, ¶ 26; *see also Jackson*, 443 U.S. at 319.  Applying the appropriate standard and considering both the direct and circumstantial evidence, the state court of appeals concluded that "the state presented ample evidence proving Peacock was the driver in the robbery[]" and "[v]iewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Peacock guilty of the assault and robbery offenses beyond a reasonable doubt." Doc. 5-1, p. 74, ¶ 27.

In rendering its decision, the court of appeals detailed the direct and circumstantial evidence which it found was sufficient to support the convictions. *Id.*  Peacock challenges findings made by the state court of appeals regarding where the evidence relating to the crimes was found.  He argues that he previously stated that he owned the two-family dwelling where the evidence was located but he resided in the upstairs unit not the downstairs unit where the evidence was found.  He contends that the court of appeals ignored this fact when rendering its decision and incorrectly stated that weapons used in the crime as well as the victim's backpack were found in the house where Peacock resided.  Again, Peacock's argument is focused on his claim that there was a lack of direct evidence connecting him to the crime and/or his claim that the witnesses' credibility, including his own, should have been adjudged differently.  However, this Court does not reweigh the evidence or assess the credibility of witnesses.  And, circumstantial evidence is sufficient to support a conviction.

Considering the foregoing, the undersigned concludes that Peacock has not shown that that the state court of appeals unreasonably concluded that there was sufficient evidence to

support his convictions.  Nor has he shown that the state court of appeals' sufficiency determination was contrary to or an unreasonable application of clearly established federal law, as required under AEDPA.

In his Traverse, Peacock raises a challenge to the jury charge provided by the trial court, arguing that the jury charge pressured the jury to come to a verdict.  Doc. 9, pp. 20-23.  The jury charge that Peacock challenges relates to the trial court informing the jury of planned rallies and protests that were starting to form downtown and providing the jury with the option to stay and continue to deliberate on a Friday afternoon or to proceed home to avoid the possibility of having a difficult time getting home due to the rallies/protests.  Doc. 9, pp. 21-22; Doc. 5-4, pp. 192-194.  Peacock's jury charge argument/claim was not presented to the state courts.  Thus, to the extent that Peacock seeks federal habeas relief based on an improper or prejudicial jury charge, he failed to exhaust said claim and the Court should not consider it.  Further, since he did not argue in state court that his convictions were not based on sufficient evidence because of an improper or prejudicial jury charge, to the extent that he presents the argument in support of his sufficiency of the evidence claim, the Court should not entertain the argument.  Moreover, even considering Peacock's jury charge argument, Peacock has not demonstrated how the state court of appeals' sufficiency determination was contrary to or an unreasonable application of clearly established federal law, as required under AEDPA.

Based on the foregoing, the undersigned concludes that federal habeas relief is not warranted based on Peacock's sufficiency of the evidence claim and, therefore recommends that the Court DENY Peacock's sufficiency of the evidence claim in Ground Two.

## IV.    Recommendation

For the reasons stated herein, the undersigned recommends that the Court DISMISS

and/or DENY Peacock's Petition (Doc. 1).


Dated: August 21, 2019

*/s/ Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge



## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).